MILLER *et al. v.* THE ARGONAUT AND THE JOHN C. INGRAM.

*(District Court, N. D. Illinois.* March 14, 1889.)

1. COLLISION—IN CHICAGO RIVER—TUGS AND TOWS.
   The barge A., loaded quite deeply with iron ore, was proceeding up the south branch of the Chicago river, in tow of the tug T. She had her steam on, but was not using it for propulsion. Her course lay along the west bank of the river. When she reached the bend of the river between Mason's slip and Allen's slip, the curve being from west to east and back again, she was obliged to swing over to the middle of the stream, in order to pass a schooner, lying at a dock just at the point of the bend, the river being only about 120 feet wide. The I., with libelant's schooner in tow, was just rounding the east curve, going down the river, at the rate of five or six miles an hour, and checked her own headway for a moment, but without checking that of her tow, and then proceeded rapidly on her way, and in attempting to pass on the east side of the river, between the stern of the barge and the dock, the collision occurred. *Held,* that the I. was at fault in attempting to take her tow through so perilous a passage, with the barge occupying so much space.

2. SAME—IMPUTED FAULT.
   The signal by the T. for the I. to go ahead, after she had checked her speed, though it may have contributed to the collision, cannot be imputed as a fault to her tow, the A.

In Admiralty. Libel for collision.

*H. W. Wolseley,* for libelants.

*R. Rae,* for the Argonaut.

*Schuyler & Kremer,* for the John C. Ingram.

BLODGETT, J. The libelants, as owners of the schooner Moselle, bring this suit to recover damages for injuries sustained by the schooner from a collision with the steam-barge Argonaut, which occurred on the 6th day of August, 1887, in the waters of the south branch of the Chicago river, on the bend between Mason's slip and Allen's slip. It appears that the tug Ingram took the schooner Moselle in tow at some point on the south branch of Chicago river above Main-Street bridge, for the purpose of towing her into the lake. The barge Argonaut was proceeding up the river, loaded quite deeply with iron ore, in tow of the tug Robert Tarrant. She had her steam on for emergencies, but was not using it for the purposes of propulsion, and her course lay along the west bank of the river. When she reached the knuckle or bend in the river between Mason's slip and Allen's slip, the curve being from the west towards the east and back again, she was obliged to swing from the west side of the river over towards the middle, for the purpose of passing the schooner Colin Campbell, which lay at a dock just upon the point of the bend, the river being at that point only about 120 feet wide. At this time, the Ingram, with the Moselle in tow, was just rounding the concave or east curve of the bend, and the Ingram checked her own headway for a moment, but without materially checking the headway of the schooner, and then put on steam, and proceeded rapidly down the river, and in attempting to pass upon the east sde of the river, through the space between the stern of the barge and the east dock, the collision occurred. The proof

shows that the Ingram's speed was quite fast, say five or six miles an hour, from the time she passed through the draw of the Main-Street bridge until she nearly reached the bend, when, as I have said before, the tug checked up, but the schooner, by the impetus which she had before that received, drifted quite rapidly down the stream towards the barge. The proof also shows, I think, that the master of the Tarrant, towing the Argonaut, signaled the master of the Ingram to go ahead after the Ingram had checked up. The libelant claims there was bad management and fault on the part of both the tug Ingram and the Argonaut, whereby the accident occurred. It seems to me the proof makes a clear case of bad management on the part of the master of the tug Ingram. It was a fault on his part to attempt to pass the Argonaut on this bend; she was deeply loaded, the water was shallow at that point, and a barge drawing as much water as she did, was liable to sheer, in swinging around a bend like this, so as almost necessarily and unavoidably to bring her stern close to the east bank, or at least so close up the passage-way as to make it difficult to take the Moselle safely through. The fact that the Argonaut was obliged to make a deflection from her course to pass the Campbell would increase her tendency to swing, or sheer, to port. All these were circumstances palpable and apparent to the master of the Ingram, and should have been a sufficient warning to him not to attempt to take his tow through along-side the Argonaut, while she was swinging around the bend; but, instead of doing this, he vacillated. He first stopped, perhaps thereby losing some of the headway upon his tow, and then changed his mind, either as the result of his own conclusions, or at the suggestion or direction of the master of the Tarrant, and attempted by a rapid motion to carry his tow through the gap. The Tarrant and her tow, and the Campbell, lying at the dock on the knuckle of the bend, were all in plain sight of the Ingram from the time she passed the Main-Street bridge, a distance of about a half mile above; and under these circumstances, it seems to me, the conduct of the master of the Ingram can be considered little less than reckless in attempting to carry his tow through so perilous a passage as that upon this bend, with the Argonaut occupying so large a space in the river as she necessarily did; and by swinging out to pass the Campbell there was unavoidably imparted to her some tendency to swing further over towards the east bank of the river. Undoubtedly the master of the Ingram, under the circumstances, should have proceeded down the river so slowly as to have had his tow completely in control, and been able to either stop her or go so slowly as to allow the Argonaut to get clear of the bend before he brought his tow along-side of her. This he did not do, for at no time does he seem to have had the tow under control. It is probable, I think, from the testimony, that the master of the Ingram intended to slow up after he had taken in the situation, but perhaps at too late a moment, and hence checked the movement of his tug, but not substantially the movement of the tow. He saw quickly, afterwards, that the tug, from the impetus she already had, was rapidly approaching the gap between the stern of the barge and the east dock, and hence he put on steam, and attempted

by a rapid movement to carry his tug and tow through this gap before the swinging of the barge should effectually close the passage, and failed in his effort so to do, as the barge swung so rapidly as to bring the schooner violently against the port quarter of the barge. It is possible that, if the Ingram had not slowed at all, but had kept her full speed, he might have carried the Moselle clear of the barge, but this hesitation was fatal. I do not wish to be understood as saying that I think he should have kept his speed, and have attempted to pass it at this dangerous place. The prudent and proper thing was for him to have stopped and waited until the Argonaut had passed the bend. The proof shows that the Ingram, after having checked her own headway, but not materially that of her tow, as I have said, was signaled by the master of the Tarrant, towing the Argonaut, to go ahead. This action on the part of the master of the Tarrant, although it may have contributed to bring about the collision, cannot be imputed as a fault to the Argonaut. The Argonaut was in tow of the Tarrant and helpless in her hands, and is not responsible for the mistakes made by the master of the Tarrant, in either advising or directing the Ingram to proceed; and hence, as the Tarrant is not a party to this suit, I do not conceive that what took place between the masters of these tugs is at all material to the questions in this case, or to be imputed as a fault to the Argonaut.

I, therefore, find that the collision was brought about solely by the fault of the Ingram, and there will be a decree dismissing the libel as against the Argonaut for want of equity, and awarding damages sustained by the collision against the Ingram.